[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Factual Background
These three cases were brought by the plaintiff Leslie Carothers, the Commissioner of Environmental Protection (Commissioner), against the defendants Connecticut Building Wrecking Company, Inc. (CPW), Geno Capozziello, and Russell Capozziello, and were consolidated for trial.
The Commissioner is charged with administering and enforcing the solid waste management laws of Connecticut. Conn. Gen. Stats. 22a-208. Pursuant to the authority, on CT Page 6833 June 1, 1986 the Commissioner entered Order No. 219 requiring. CBW to discontinue all waste deposit at the 329 Central Avenue site. CBW did not appeal the order. Accordingly, the order is a final order not subject to review or appeal.
The order states in part:
 NOW THEREFORE, CBW shall, discontinue this operation in accordance with the following schedule.
 1. Within thirty (30) days of issuance of this order discontinue all waste deposit at the site.
 2. Within thirty (30) days of issuance of this Order retain the services of a licensed exterminator and begin a waste removal and vector extermination program. The waste removal schedule and vector extermination program are to be coordinated in a manner which will not drive vectors into the neighborhood.
 3. Confirm to the Commissioner, within sixty (60) days from issuance of this Order, that such a waste removal and vector extermination program has been completed. The vector extermination program need not be carried out if local Director of Health confirms to the Commissioner, in writing, a vector extermination program is not necessary.
 This Order shall become effective upon date of issuance and shall become final thirty (30) days from date of issuance unless prior to that time a written answer is filed in accordance with provisions of Sec. 3(b) of P.A. 85-334. Violation of this order may subject CBW to a penalty of up to $10,000 per day according to Sec. 4, P.A. 85-334.
In Case I, CV86-324410, and Case III, CV89-364749, the Commissioner is seeking an injunction and civil penalties pursuant to Conn. Gen. Stat. 22a-226.
In Case II, CV87-335493, the Commissioner is seeking penalties pursuant to Conn. Gen. Stat. 22a-438.
Case I
The defendant in this case is CBW, a Connecticut corporation, with an office and property at 329 Central Avenue, Bridgeport, Connecticut. Its officers are Geno Capozziello, Sr., President and Treasurer, and Russell Capozziello, Sr., Vice President and Secretary. The claims are set forth in a CT Page 6834 five-count amended complaint dated July 11, 1989.
The first count alleges that CBW disregarded a Department of Environmental Protection (DEP) final, unappealed administrative order, Order No. 219, dated June 1, 1986. (Exhibit A). One provision of the order required CBW to discontinue all waste deposit at 329 Central Avenue.
The second count alleges that from June 1, 1986 through June 30, 1989 CBW operated at 329 Central Avenue a volume reduction plant and a transfer station, as then defined, respectively, in Conn. Gen. Stat. 22a-207 (5) and Conn. Dept. Reg. 22a-209-1, without a permit from the Commissioner. The third count alleges that from July 1, 1989 through the present, CBW operated a volume reduction plant and transfer station, as, now defined, respectively, in Conn. Gen. Stat. 22a-207 (5) and (10), without a permit.
The fourth count alleges that CBW transferred solid waste from 329 Central Avenue to other facilities that were operating without permits.
The fifth count alleges that the waste at 329 Central Avenue generates leachate that discharges into groundwater.
The sixth count alleges that CBW's conduct has resulted in or will result in unreasonable pollution, impairment or destruction of the state's natural resources.
CBW has interposed seven special defenses and counterclaims in its pleading dated June 29, 1988. The counterclaim was dismissed on September 28, 1988.
The first special defense maintains that the City of Bridgeport's failure to provide a waste disposal site made it impossible for CBW to comply with the law. The second special defense contends that since the Commissioner failed to require the City to provide for waste disposal, the Commissioner is estopped from claiming that CBW violated the law. The third special defense asserts that the Commissioner's failure to act, against the City prevents the Commissioner from claiming against CBW because the equitable doctrine of "clean hands."
The fourth special defense claims that laches prevents enforcement of the law against CBW. The fifth, sixth, and seventh special defenses claim that CBW has not operated the facility it is charged with operating.
Case II CT Page 6835
The defendants in this case are CBW, Geno Capozziello, and Russell Capozziello. The claims are set forth in a seven-count amended complaint dated May 2, 1988.
The first count asserts that between July 13, 1987 and July 21, 1987 the defendants transported solid waste from 329 Central Avenue, Bridgeport, Connecticut to Town Line Body Shop, Inc. at 781 Main Street in Monroe, Connecticut, and disposed of the solid waste, without a permit from the Commissioner, at the Monroe location. The second count contends that the Monroe site, where the solid waste was deposited, was a wetland or watercourse area and that the disposal was without a permit from the Commissioner. The third count alleges that the defendants created a discharge into surface or groundwater of the state without a permit from the Commissioner.
The defendants have asserted six special defenses and counterclaims in their pleading dated June 29, 1988. The counterclaim was dismissed on September 9, 1988. Also, the defendants filed and later withdrew a third-party complaint against the City of Bridgeport.
The first to fourth special defenses mirror the first to fourth special defenses in Case I. The fifth special defense contends that no civil penalty can be assessed as there was no final administrative order. The sixth special defense claims that the Commissioner cannot proceed against the defendants as the Commissioner has not exhausted administrative remedies.
Case III
The defendants in this case are Geno Capozziello and Russell Capozziello. The claims are stated in a five-count complaint dated July 13, 1989, and are against Geno and Russell Capozziello personally. The claims correspond to those asserted against CBW in Case I. The first, second, third, fourth, and fifth counts are the same as, respectively, the second, third, fourth, fifth, and six counts in Case I.
The defendants have asserted several special defenses in their pleading dated October 9, 1990. The first special defense asserts that the defendants, as corporate officers, cannot have personal liability, and that they did not personally engage in the conduct alleged. The second, third, and fourth special defenses claim that because of Case I against CBW, res judicata, collateral estoppel, and the prior pending action, doctrine precludes this action against Geno and Russell Capozziello. The fifth special defense, which had asserted laches, was stricken on October 9, 1990. The CT Page 6836 sixth special defense claims injunctive relief is not appropriate. The seventh special defense contends that due to the claimed shortage of landfill space the defendants had no reasonable alternative but to violate the law. The eighth special defense claims that no civil penalty can be assessed under Conn. Gen. Stat. 22a-226 because there is no final administrative order.
In addition, all defendants argued at trial and in their trial brief the special defense that the final administrative Order No. 219 has res judicata effect on all claims and causes of action raised in these three cases, with the exception of the first count in Case I.
II. Evidence
In substantiation of her allegations, the Commissioner presented a great deal of testimonial and documentary evidence to substantiate its claims. The following recitation is illustrative of the volume of evidence from which the court has made its findings and reached its conclusions of law.
 A. Operating without a Solid Waste Permit: Cases I and III
To support her allegations in Case I and Case III, the Commissioner offered testimonial and documentary evidence, which began with the testimony of Kathy Alexander, a DEP employee whose duties from 1981 to 1988 involved investigating and reporting violations of solid waste laws.
In investigating CBW's compliance with Order No. 219, Ms. Alexander visited 329 Central Avenue on August 26, 1986, July 20, 1987, January 6, 1988, January 25, 1988, February 22, 1988 and March 4, 1988. On these visits she observed various amounts of demolition material on the site and took photographs, which were introduced into evidence, documenting her observations.
The Commissioner also presented the testimony of four members of the Bridgeport Fire Department. Their testimony indicated that on February 2, 1991, February 3, 1991, February 18, 1991, March 3, 1991, March 5, 1991, March 12, 1991, March 13, 1991, and March 26, 1991, they responded to fire alarms at 329 Central Avenue where they saw a pile of demolition debris measuring approximately 100 feet by 150 feet by one and one-half to two stories high (or30-35 feet high). At various times they saw clouds of smoke, heavy smoldering, and flames rising from the debris. Also, there was an odor and pollution in the air. All of the CT Page 6837 firefighters felt the condition of the pile posed a fire hazard in that embers could become airborne from such a large, open pile. One firefighter noted that the piles posed a real threat to the two-story wood frame house abutting the site.
The plaintiff offered the testimony of men in the refuse business. All of them indicated they knew both Geno and Russell Capozziello and were familiar with the site at 329 Central Avenue. These witnesses testified that they hauled demolition material to the site on various dates from November 1988 to March 27, 1991. The witnesses' subpoenaed records substantiating their use of the site.
For example, Robert McKiernan, manager of Latella Carting Company, stated that his company hauled bulky waste such as wood, metal, dry wall, and roofing material to the site in trucks with open tops, roll-off containers with capacities of 12, 20, and 30 cubic yards. He testified that from November 1988 to March 27, 1991 his company paid the defendants $85,000 to $95,000 to use the site. His testimony further revealed that the demolition hauled to the site was thereafter removed by the defendants to other locations.
John Perry stated that his company has used the site on a daily basis for the past year up until April 22, 1991. Every day, one or twice a day, his company brought debris to the site in 12 and 30-cubic-yard containers. A 30-cubic-yard container averages 3-5 tons in weight. The debris totalled 100-150 cubic yards per day for which he was charged $14 per cubic yard. His company paid $2000-$4000 per week to dump at the site. Mr. Perry observed the debris at the site being compacted, reduced, and hauled away.
To corroborate the testimony of these witnesses, the Commissioner elicited the testimony of Frank R. Juhasz, a detective with the Connecticut State Police. Detective Juhasz rendered a surveillance of 329 Central Avenue from August 25, 1987 to September 1989. He observed building debris being brought to the site about five times per month in trucks with a 30-cubic-yard capacity. He also saw trucks remove debris from the site about six times in a year. On September 27, 1988, he followed a truck leaving the site with debris to a location in New York state. He noted the license plate and found it belonged to CBW. (See Exhibit P).
The Commissioner also presented Christopher Stapleton, owner of a recycling company whose office is three blocks from the site. Mr. Stapleton observed operations at the premises for the past three to four years. He stated the operation at 329 Central Avenue involved processing bulky CT Page 6838 waste. He saw equipment such as backhoes, payloaders, grinders, pulverizers, and an Eagle Crusher in use. He indicated that the pile at the site had been growing and that at the end of April 1991 it was about 15 feet high and covered about an acre in area.
The Commissioner offered the testimony of Stanley Gormley, a DEP inspector. He testified he had been to 329 Central Avenue on the following dates: September 27, 1988, September 30, 1988, January 17, 1989, March 8, 1989, May 19, 1989, May 23, 1989, August 18, 1989, August 23, 1989, May 19, 1990, May 25, 1990, July 11, 1990, September 10, 1990, January 4, 1991, and January 28, 1991. On these occasions he saw trucks coming and going to the site carrying demolition material. He recorded the registration number of three trucks that later proved to be registered to CBW. Mr. Gormley also observed one to three piles of demolition debris and saw bulldozers crushing and pulverizing the piles. He documented his observations by ground and aerial photographs. The photographs show the pile higher than the fence. (Exhibits HH 1-5)
Thomas Pregman, a DEP Supervising Analyst, testified that he visited the site in April 1986, May 31, 1989, and March 4, 1991, and also observed demolition material being hauled to and from the site. He testified that on March 4, 1991, the pile almost encompassed the entire property. (Exhibit LL 1-3). He classified the site as a transfer station and perhaps a landfill if the pile were not removed. He conservatively estimated the volume of the pile to be 40,000 cubic yards, basing his estimate on the size of the property (300 feet by 185 feet) and the height of the pile. Mr. Pregman expressed concern with the pile regarding fire hazard (spontaneous combustion or arson), rodent harborage, dust, lead and asbestos dust, safety (spillage, attraction for children)) and water quality.
The plaintiff established by credible evidence that solid waste at the site exposed to the elements causes chemical changes which create leachate, thus deteriorating the quality of the groundwater. Also, that accumulation of solid waste caused harboring of rodents and insects, migration of dust and constitutes a fire hazard.
The evidence adduced shows a danger to the public exists at the site.
Mr. Pregman also spoke with the defendant, Geno Capozziello, by phone and in person. Geno Capozziello stated he ran the day-to-day operations, worked on demolition jobs, was a corporate officer and president of CBW. He CT Page 6839 indicated the equipment he used, such as an Eagle Crusher. The site had no permit from DEP, yet Geno Capozziello acknowledged he brought in and hauled out demolition material.
Mr. Pregman also spoke with Russell Capozziello, who indicated he was a manager, a corporate officer, and secretary of CBW.
The Commissioner showed that Geno and Russell Capozziello were principal officers of the corporation and that Geno controlled the field operations of the business and made arrangements for customers to deposit debris at the site. Russell Capozziello was also involved in managing the operation, mainly the office side of the business. He signed most of the checks and dealt with the accountant. Therefore, both personally and individually were involved in the day-to-day operation of the business.
The Commissioner attempted to call as witnesses the defendants, Geno Capozziello and Russell Capozziello, who asserted their fifth amendment privilege and refused to testify. The individual defendants failed to testify at all and, therefore, did not directly refute the evidence of the Commissioner.
B. Discharging Into A Wetland Without A Permit: Case II
To substantiate her allegations in Case II, the Commissioner offered the testimony of Clifford Dayton, owner and operator of Town Line Auto Body, Inc., at 781 Main Street in Monroe, Connecticut, (the Monroe site), the site where the discharge violations occurred. In the summer of 1987, Mr. Dayton allowed CBW to bring fill into the rear of his property at the Monroe site. He testified that about six or seven trucks a day brought in fill for a two-week period. He further testified that the material consisted of dirt, wood, rocks, bricks, and metal and filled in an area of about one-half acre in size to a depth of three feet.
The filling was done without authority or permits from the DEP. A DEP representative visited the Monroe site on April 25, 1989, April 26, 1989, May 1, 3, 4, 5, 10, 12, and 17 of 1989 and June 16, 1989, whereby the Commissioner had ordered and monitored the fill removal.
Steven Tessitore, a DEP supervisor, first visited the Monroe site in August 1987 and concluded that the fill encroached a legally defined and designated wetland area, which is regulated by the Commissioner. Conn. Gen. Stat. 22-38 and22a-39. He indicated that a portion of the Monroe site was CT Page 6840 also on a watercourse. He next visited the site on April 25, 1989, relative to the removal of the fill, which he approximated covered an area of 200 feet by 150-175 feet to a depth of five feet.
Mr. Tessitore testified that the placement of the fill destroyed the wetland functions, diminished functional values, diminished food and homing area for wildlife, and reduced aesthetic values. In addition, the fill eliminated filtration of water and flood storage. He stated that the site is now 60% restored and should soon be 100% restored.
When Case II was instituted, Town Line Body Shop, Inc., and Clifford Drayton were also named as defendants. However, on August 10, 1990, a partial judgment was entered as to them by way of a stipulation. These defendants, besides paying a civil penalty, paid $55,000 to have the fill removed. Approximately $12,258 was paid to CBW to remove the fill CBW had placed.
C. Polluting Waters: Cases I, II and III
To support her allegations that the defendants polluted the waters at 329 Central Avenue and the Monroe site, the Commissioner presented Elise Patton, a DEP Supervising Analyst, with the Bureau of Water Management, Enforcement Division.
Ms. Patton gave a general description of the effects on rainwater when it comes in contact with a demolition debris pile. She indicated that the quality of the rainwater is damaged, that it becomes turbid by picking up waste particles, that oxygen is depleted because it is consumed by bacteria and, therefore, the rainwater becomes more corrosive, and that finally the rainwater becomes polluted. The polluted rainwater then pollutes the water in the water table by entering the ground and passing into the groundwater which flows into the water table.
Ms. Patton had not been to either the 329 Central Avenue site or the Monroe site. She never conducted any tests on the pile at 329 Central Avenue, on the rainwater after it fell on and passed through the pile, or on the water in the water table at either 329 Central Avenue or the Monroe site. She could not and did not testify as to the actual effect, if any, the pile had on polluting the water in the water table. She did not testify as to any polluted water at the Monroe site.
D. Defendants' Evidence: Cases I, II and III
The defendants called Mr. Pregman to testify as to the CT Page 6841 volume of the pile and the cost to clean up and close the site, which cost he estimated to be $800,000. However, Mr. Pregman also indicated that Geno Capozziello informed him the cost to clean up and close the site would be about $200,000.
Mr. Edward Jackson, a licensed public accountant who has had CBW for a client for about 29 years, described the financial condition of CBW. The court did not and does not find his testimony to be particularly convincing or helpful on the issue.
Alfred Capozziello, a nephew of Geno and Russell Capozziello, testified that 329 Central Avenue was not a landfill because debris was hauled out on a regular basis. Finally, the defendants presented the testimony of Maria D'Aniello, an attorney with the law office of Gary Mastronardi. Ms. D'Aniello indicated that she was legally involved in the resignation of Russell Capozziello from CBW in May 1990. However, no substantiating documents were offered.
III. Findings
First, the defendants have asserted various special defenses. The defendants have the burden of proof as to their special defenses.
The defendants have failed to offer any evidence to establish the allegations of said special defenses. The court has reviewed the defendants' Trial Brief and finds that it has supplied no support in the law or authority to establish any legal basis for their applicability. The court adopts the position of the plaintiff in their Preliminary Trial Memorandum and Trial Memorandum in their opposition to said special defenses. Defendants' special defenses appear to be more resourceful than they are persuasive. The court finds they are without legal merit and do not apply to these cases. The defendants have failed to sustain their burden of proof that the special defenses pertain to these cases.
Second, the evidence shows that Geno Capozziello was involved in the day-to-day operations of the business and that, until recently, Russell Capozziello was involved in the financial management of the business, dealing with the accountant, signing business checks, and endorsing business checks. Geno and Russell Capozziello have personally participated in operating the facility. The plaintiff has demonstrated that Geno and Russell Capozziello have run the facility and managed and supervised it. CT Page 6842
The plaintiff has referred to the case of Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580, where these same individual defendants were found to be personally liable.
The court finds that Geno and Russell Capozziello, as individuals, personally participated in operating the facility, that they personally engaged in conduct that was the subject of Order 219, and therefore are personally liable for the violations that the Commissioner has proved.
The court finds unpersuasive the attempt to distinguish the liability of Russell Capozziello from that of Geno Capozziello. The defendants have attempted to apportion their liability and such apportionment has not been established, in that the defendants have not sustained their burden of proof on this issue. The evidence shows that all defendants are equally answerable and responsible to the Commissioner. Therefore, the court finds that the defendants are jointly and severally liable to the Commissioner.
Third, the court finds the evidence regarding water pollution to be speculative and, therefore, the damages caused to or by the "polluted water" cannot be ascertained. The court finds the Commissioner has not met her burden of proof as to her allegations of water pollution and, therefore, will not assess civil penalties for this claim.
Fourth, the court finds that the Monroe site is a wetland area as defined in Conn. Gen. Stat. 22a-29 (2) and that the defendants deposited debris there without a permit in violation of Conn. Gen. Stat. 22a-32.
Fifth, the court finds that the defendants continuously violated Order No. 219.
Sixth, the court finds that the defendants were operating a volume reduction plant and a transfer station as these terms were defined prior to the statutory amendments in P.A. 89-386, effective July 1, 1989, and in Conn. Dept. Reg. 22-209-1 and are now defined in Conn. Gen. Stat. 22-207 (5) and (10).
Seventh, the court finds that the defendants have made significant profit from conducting and carrying on business at 329 Central Avenue.
Lastly, the Commissioner has established by credible evidence that the activity at 329 Central Avenue constitutes a hazard to the public. CT Page 6843
IV. Penalties
In rendering a determination of the instant cases, the court is cognizant of the Supreme Court decision in Carothers v. Thomas Capozziello, et al., 215 Conn. 82, where at page 103 the court stated:
 We conclude that when trial courts are asked to impose penalties pursuant to 22A-226 they are to be guided in the exercise of their discretion by considering such factors as those set forth in 33 U.S.C. § 1321 (b)(6)(A), as well as by the two general goals set forth in the Civil Penalty Policy; Env. Rptr. (BNA) p. 41-2991-93; of the federal Environmental Protection Agency. See Chesapeake Bay Foundation v. Gwaltney of Smithfield, 611 F. Sup. 1542, 1556-57 (E.D.Va. 1985), aff'd, 791 F.2d 304
(4th Cir. 1986), vacated on other grounds 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Those factors include, but are not limited to: (1) the size of the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations, (6) deterrence of future violations; and (7) the fair and equitable treatment of the regulated community. See 33 U.S.C. § 1319 (d) (Cum. Sup. 1989); Perg v. Powell Duffryn Terminals, Inc., 720 F. Sup. 1158, 1160 (D.N.J. 1989); United States v. Environmental Waste Control, Inc., 710 F. Sup. 1172, 1242-45
(N.D.Ind. 1989); United States v. T S Brass Bronze Works, Inc., 681 F. Sup. 314, 322 (D.S.C. 1988).
The court has taken these factors into consideration in assessing its fines.
The court is impressed with the gravity of the defendants' violations, which have been continuous, major, and have occurred for a substantial period of time.
The court finds that the defendants have knowingly and blatantly disregarded Administrative No. 219. They have continued operations at the Central Avenue site and have made substantial profit from conducting an unlawful operation, which poses a hazard to the public.
The plaintiff has established that the defendants have CT Page 6844 flagrantly and repeatedly violated environmental laws of the State of Connecticut and carried on their business without authority, approvals or permits.
The defendants have displayed a lack of good faith efforts to comply with the administrative order or with applicable statutory requirements.
The plaintiff has provided substantial and credible evidence to justify a finding by the court, that the imposition of remedial measures and substantial penalties is appropriate.
Conn. Gen. Stat. 22-226 authorizes the court to impose a civil penalty not to exceed twenty-five thousand dollars per day for each violation of an order or any solid waste management statute. The statute also empowers the court to grant injunctive relief to prevent further violations from occurring. Conn. Gen. Stat. 22a-438 authorizes the court to assess a civil penalty not to exceed twenty-five thousand dollars per day for each violation of any water pollution control statute. The court has considered the factors delineated in the statute in assessing its fine for dumping in a wetland without a permit. The court is aware that the civil penalty provisions in both Conn. Gen. Stat. 22a-226 and22a-438 have been upgraded from ten thousand dollars to twenty-five thousand dollars by P.A. 89-270, effective October 1, 1989.
Accordingly, the court assesses a civil penalty in the amount of two hundred fifty dollars ($250) per day for unauthorized dumping in a wetland for a period from July 25, 1987 to April 25, 1989, which is 651 days, for a total penalty of one hundred sixty-two thousand, seven hundred fifty dollars ($162,750).
The court assesses a civil penalty of three hundred fifty dollars ($350).per day for violating Order No. 219 for a, period from January 25, 1988 to May 1, 1991, which is 1,192 days, for a total penalty of four hundred seventeen thousand, two hundred dollars (417,200).
The court assesses a civil penalty of two hundred — fifty dollars ($250) dollars per day for operating a volume reduction plant without a permit and two hundred fifty dollars ($250) per day for operating a volume reduction plant without a permit and two hundred-fifty dollars ($250) per day for operating a transfer station without a permit for a period from October 1, 1989 to May 1, 1991, which is 578 days, for a total penalty of two hundred eighty-nine thousand dollars CT Page 6845 ($289,000).
The grand total of the civil penalties assessed is eight hundred sixty-eight thousand, nine hundred fifty dollars (868,950) for which the defendants are jointly and severally liable.
Broken down, the fines are assessed as follows:
Monroe/dumping in wetland $250 x 651 days: $162,750 7/25/87 — 4/25/89
Bridgeport/Violation of Order $350 x 1,192 days: 417,200 1/25/88 — 5/1/91
Bridgeport/Violation of Statutes $500 x 578 days: 289,000 10/1/89 — 5/1/91 TOTAL: $868,950
The court also orders the defendants to discontinue all waste deposit at 329 Central Avenue, Bridgeport, Connecticut and also to discontinue receiving, transferring, processing, crushing, and pulverizing debris at said site. The defendants are also ordered to remove the pile of debris at 329 Central Avenue by December 1, 1991.
JUDGMENT
Having found for the plaintiffs in all three cases, the court's full order is set forth as follows:
1. Defendants Geno Capozziello, Russell Capozziello, Connecticut Building Wrecking Company, Inc. and each of their officers, agents, servants, employees, and any other person or entity acting on their behalf, are enjoined as follows:
(a) Do not deposit solid waste at any location anywhere within the State of Connecticut, unless the Commissioner of Environmental Protection has issued a permit to operate a solid waste facility at such location.
(b) Do not transfer any solid waste in any manner at 329 Central Avenue, Bridgeport, Connecticut. Do not own, operate, or maintain a transfer station, as that term is defined in Conn. Gen. Stat. 22a-207 (10) anywhere within the State of Connecticut, unless you first obtain a permit for that purpose from the CT Page 6846 Commissioner of Environmental Protection. Nothing in this provision shall be construed to impede any remedial action required by this Judgment, so long as such remedial action is carried out in the manner specified by this Judgment.
(c)(1) Remove all of the solid waste that has been deposited at 329 Central Avenue, Bridgeport, Connecticut (hereinafter "the site") in accordance with the provisions of this Judgment. Removal must commence no later than the 20th day from the entry of this Judgment and shall be completed no later than December 1, 1991.
(c)(2) Waste which is deposited at the site may only be disposed of at a facility authorized by the law of the state in which the facility is located to receive solid waste. If disposal takes place within the State of Connecticut, this means a facility possessing a permit from the Commissioner of Environmental Protection to operate a solid waste facility. No waste shall be removed from the site unless at least five business days prior to the removal, defendants have notified the plaintiff in writing of the specific date on which removal is to take place, the specific quantity of solid waste to be removed on that date, and unless defendants have submitted to the plaintiff prepaid dump tickets or invoices from the facility that will receive the waste equivalent to the quantity of waste to be removed on that date. Each such dump ticket or prepaid invoice must contain an individually identifiable number, the date it was purchased, and reference that it is to be used for the "329 Central Avenue, Bridgeport, CT" waste removal job. (c)(3) Keep a log of waste removal activities at the site including the following information for each truckload of waste removed; (1) the date; (2) the license plate registration number for the truck, or for the tractor and for the trailer if tractor trailer combinations are used; (3) the time the empty truck arrived at the site; (4) the time the loaded truck left the site; (5) the time the loaded truck arrived at the disposal site; (6) the time the empty truck left the disposal site; and (7) the number on the prepaid dump ticket or prepaid invoice for disposal of the loads disposed of. No later than 4:00 p. m. on each Tuesday, defendants shall submit to the plaintiff all entries for this log for waste removed during the preceding calendar week, until such time that all waste has been removed from CT Page 6847 the site. Upon written or oral request of any representative of the plaintiff, the defendant shall make the log immediately available if the request is made between 9:00 a.m. and 5:00 p. m. on a business day, and reasonably available if the request is made during other times, but no later than 9:00 a.m. on the next business day.
2. In accordance with the provisions of Conn. Gen. Stat.22a-35, 22a-226, 22a-438, a civil penalty is assessed against Geno Capozziello, Russell Capozziello and Connecticut Building Wrecking Company, Inc. in the amount of eight hundred sixty-eight thousand, nine hundred fifty dollars ($868,950) for the violations pleaded in the complaints. Defendants Geno Capozziello, Russell Capozziello and Connecticut Building Wrecking Company, Inc. are jointly and severally liable for this civil penalty.
3. The injunctive provisions of this Judgment are entered under penalty of $500 per day per violation. In the event that any of the provisions of this Judgment are violated, the court may finalize a penalty in this amount and take any other action authorized under the contempt power in order to coerce compliance with the Judgment, including the incarceration of any noncomplying defendant.
4. The court shall retain jurisdiction in order to monitor compliance with this judgment. Additional hearings may be scheduled by the court, at the request of any party, with notice being provided to all parties. At any such hearing, the court shall consider whether or not the injunctive provisions of the Judgment have been complied with, whether or not any further orders are necessary to remediate the problems addressed at the site, and if any provision of this judgment has not been complied with, whether or not to hold the offending party in contempt and sanction the offending party appropriately .
5. This judgment addresses and disposes of all three in the caption. In order to avoid duplication in the event that any post-judgment filings need to be made concerning the enforcement of any of the provisions of this Judgment, such filings shall be made in the file bearing docket number 364749.
6. The plaintiff is awarded costs.
Robert F. Stengel, J.